## Affidavit of Probable Cause

1. I, Marnie Musgrave, being duly sworn, state that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") of the United States Department of Justice and have been employed by ATF since May 2008. I am an investigative or law enforcement officer of the United States and am empowered by law to conduct investigations of, and to make arrests for, violations of federal laws, including, but not limited to, Title 18, United States Code, Section 922(g), and Title 26, United States Code, Section 5861. I successfully completed the Criminal Investigations Training Program and the ATF National Academy Special Agent Basic Training at the Federal Law Enforcement Training Center. Previous to this employment, I was employed as a Special Agent with Tennessee Bureau of Investigation ("TBI") for approximately five years. Three out of these five years, I was a Task Force Officer assigned to the Drug Enforcement Administration. During my time as a law enforcement officer, I have participated in numerous investigations, under both federal and state law, involving homicides, thefts, police-related shootings, and other state violations. Prior to TBI, I was employed as a police officer with the Cleveland Police Department in Cleveland, Tennessee, for approximately five years.

2. This affidavit is submitted in support of a search warrant for a residence and premises located at 76 Oakes Lane, Pikeville, Tennessee, pictured in Attachment A. As will be detailed below, affiant has developed probable cause to believe that **MITCHELL OAKES** is a convicted felon unlawfully in possession of firearms and explosives. Accordingly, affiant is seeking a search warrant for this residence and premises. Affiant believes that a search of the residence and premises will provide evidence of **MITCHELL OAKES**'s possession of firearms and explosives. The information in this affidavit is based on personal and other law enforcement

personnel's knowledge and observations and of records, reports, and information from ATF and other law enforcement agencies. This affidavit is intended to support probable cause but is not intended to convey all the facts of the entire investigation.

3. I have spoken with A.O. and with other agents who have interviewed A.O. and have learned the following: A.O. is married to **MITCHELL OAKES**. A.O. and **MITCHELL OAKES** reside in Pikeville, Tennessee. A.O. is estranged from **MITCHELL OAKES** and has preliminarily obtained an Order of Protection on or about June 10, 2016, from a court in Chesapeake City, Virginia. The National Crime Information Center criminal history report for **MITCHELL OAKES** confirmed that **MITCHELL OAKES** is scheduled for a court appearance on September 13, 2016, on an Order of Protection at "CHES JDR" (A Google search of this acronym—CHES JDR—returns "Chesapeake Juvenile and Domestic Relations District Court" in Virginia.). A.O. is aware that **MITCHELL OAKES** has extensive knowledge and experience in the manufacture of and use of explosive devices. A.O. obtained this knowledge through personal observations prior to September 9, 2016, of **MITCHELL OAKES** engaging in the manufacture of and use of explosive devices.

4. Your affiant is familiar with A.O., as she has previously provided information about **MITCHELL OAKES** to law enforcement officers. On that occasion, A.O. informed officers that **OAKES** was in possession of a firearm and that the firearm belonged to him. Consequently, officers searched and found a firearm, as A.O. had stated, but A.O. later recanted her statement about the ownership of the firearm and admitted that she had purchased the firearm. Nevertheless, Tennessee proceeded against **OAKES** on that case and achieved the 2014 conviction listed in paragraph fifteen.

Page 2 of 7

Case 1:16-mj-00192-CHS   Document 2   Filed 09/11/16   Page 2 of 7   PageID #: 4

5. Based on this investigation thus far, A.O. is a registered nurse who travels to various facilities in performance of her nursing responsibilities. On September 9, 2016, A.O. traveled from Pikeville, Tennessee, to Franklin, Tennessee, to perform nursing duties at National Healthcare Corporation ("NHC") located at 211 Cool Springs Boulevard, Franklin, Tennessee. NHC is a residential Assisted Living Center. A.O. arrived at this location at approximately 3:30 p.m. A.O. parked her vehicle, a 2015 Ford Escape, in the north employee parking lot at the rear of the NHC building. This parking lot is open to the public. A.O. worked inside NHC from her time of arrival until her shift ended at approximately 7:00 a.m.

6. After ending her shift, A.O. walked to her vehicle and opened the driver's side door, where she discovered that a metal object placed under a glass bottle with wires protruding had been attached to the inside of the driver's side door. A.O. also noticed the odor of black powder, which she learned during her time with **OAKES**. Upon observing the device, A.O. believed the device to be an explosive. Subsequent investigation by state and federal authorities confirmed the device was in fact an explosive device. A.O. recalls that she locked her car but cannot recall whether it was locked when she returned. OAKES has a key and knows the keyless entry code to A.O.'s vehicle, and no damage was evident to explain entry into A.O.'s vehicle.

7. After observing the device, A.O. immediately notified persons at NHC of the danger, and personnel at NHC took action to protect its patients and employees. Primarily, NHC relocated patients on the side of the building where the explosive device was located. A.O. also called emergency services ("E-911") at approximately 7:14 a.m. to notify law enforcement of the explosive device.

8. Law enforcement officers arrived at the scene of the explosive device at approximately 7:22 a.m. and proceeded to establish a perimeter around the device. Multiple fire

department officials and other law enforcement officers responded to the scene. Williamson County Emergency Management established a command center to coordinate the emergency services' response. Explosive specialists from the ATF, Tennessee Highway Patrol ("THP"), and the Federal Bureau of Investigation also responded. The explosive specialists took photographs of the device, which I have reviewed. I have also spoken with ATF Special Agent Warren Smith, who further described the device: Attached to a black metal pipe was a metal plate, and sitting upon the black metal pipe was a wine bottle. This improvised explosive device was attached to the inside driver's side door. This device was found to contain low explosive material, screws, and possibly other material. At this time, agents have not completed a full forensic analysis of the improvised explosive device.

9. The THP explosive specialist moved the device to an area cleared for this purpose and attempted to render it safe. While following these render-safe procedures, the improvised explosive device exploded. Agents have photographed, documented, and collected as evidence the remains of the improvised explosive device.

10. ATF Special Agent Nerissa Dixon has checked the National Firearms Act Registry ("NFA") also known as the National Firearms Registration and Transfer Record and has found that **MITCHELL OAKES** does not have any firearms or explosives registered to him in the NFA.

11. Title 18, United States Code, Section 921(a)(3)(D) defines "firearm" to mean "any destructive device." Title 18, United States Code, Section 921(a)(4) defines "destructive device" as "(A) any explosive, incendiary, or poison gas—(i) bomb, (ii) grenade, . . . or (vi) device similar to any of the devices described in the proceeding clauses."

12. Title 18, United States Code, Section 922 prohibits the possession of a firearm by a person convicted of a felony.

13. Likewise, Title 26, United States Code, Section 5845(a)(8) defines a "Firearm" as "a destructive device." Title 26, United States Code, Section 5845(f)(1) defines a "destructive device" as "any explosive, incendiary, or poison gas (A) bomb, (B) grenade, . . . or (F) similar device."

14. Title 26, United States Code, Section 5861(d) provides that it is unlawful for any person to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record.

15. **MITCHELL OAKES**'s criminal history shows a conviction and sentence to four years' imprisonment on or about January 23, 2007, in Tennessee state court, Cumberland County, for solicitation to commit second degree murder. **OAKES**'s criminal history further shows a conviction and sentence to eighteen months' imprisonment on or about January 3, 2014, in Tennessee state court, Bledsoe County, for being a felon in possession of a firearm.

16. From speaking with A.O., your affiant learned that on September 6, 2016, **MITCHELL OAKES** telephoned A.O. on her cellular phone. **OAKES** "blocked" his number (meaning that the caller identification on A.O.'s phone did not reflect the number calling A.O.). However, A.O. recognized the caller's voice to be that of **MITCHELL OAKES**, based on her marriage to **OAKES**, during which she heard his voice; **OAKES** stated to A.O., "Die, bitch."

17. Law enforcement officials have obtained a cellular phone number for **MITCHELL OAKES** and the GPS data for the location of that phone on September 9, 2016, and September 10, 2016. This data shows that on September 9, 2016, at approximately 11:15 p.m., **MITCHELL OAKES** stopped at the Kangaroo Market located at 8003 Horton Highway,

Arrington, Tennessee. Franklin Police Department officer Samantha Brooks has reviewed the video surveillance footage from the Kangaroo Market for this time and date and observed **MITCHELL OAKES** on the video at the time corresponding closely to the GPS information from the phone. However, there is a slight discrepancy between the Kangaroo surveillance video, which has a time of 10:52 p.m., and **OAKES**'s phone. Detective Andrea Clark, Franklin Police Department, has verified that the time on the surveillance video at the Kangaroo Market reflects the correct time of day.

18. The GPS data from **OAKES**'s cell phone further establishes that, at the approximate dates and times shown below, **OAKES** was present at the following areas:

| Date | Time | Location |
| --- | --- | --- |
| September 9, 2016 | 9:00 p.m. | Pikeville/Crossville, Tennessee |
| | 9:45 p.m. | Cookeville, Tennessee |
| | 10:45 p.m. | Lebanon, Tennessee |
| | 11:08 p.m. | Highway 840 and Highway 41 |
| | 11:15 p.m. | Kangaroo Mart (as described above) |
| | 11:45 p.m. | I-65 at Murfreesboro Road in Franklin, Tennessee |
| September 10, 2016 | 1:25 a.m. | Parking lot at NHC (described above) |
| | 2:00 a.m. | Immediate area of NHC |

Based upon the cellular GPS data there is a range for the accuracy of the GPS data. Therefore, when the GPS data shows **MITCHELL OAKES** in the "immediate area of NHC," he may actually be at NHC. Finally, at 4:35 a.m. on September 10, 2016, the GPS data placed **MITCHELL OAKES** back in the Pikeville, Tennessee, near 1424 Bellevue Road, Pikeville, Tennessee.

19. A.O. has advised that **MITCHELL OAKES** currently resides at 76 Oakes Lane, Pikeville, Tennessee—his parents' residence. A.O. has advised that there are numerous firearms in the residence, and in the at least one outbuilding, many of which belong to **MITCHELL OAKES**. A.O. further advises that

MRM
CHS

there is ammunition reloading equipment, including black powder, at the residence. A.O. last observed firearms at the location described in paragraph two in April 2016. However, based on the facts detailed herein, **OAKES** clearly has continuously possessed firearms over a long period of time. In addition, possibly as recently as June 2016, A.O. observed **OAKES** detonate an explosive that left a large hole in the ground.

20. I have spoken with ATF Special Agent Mark Hoback, a certified explosive specialist. Agent Hoback has advised me that black powder is a low explosive material that is often used in the reloading of ammunition. Smokeless powder is another low explosive material and is also often used in the reloading of ammunition. At this time, agents have not completed the forensic analysis of the low explosive material used in the device placed in A.O.'s vehicle.

21. Based on the above recitation of facts, I believe that probable cause exists for a search of 76 Oakes Lane, Pikeville, Tennessee, as described above in paragraph two for items related to the manufacture and possession of firearms or destructive devices, including, but not limited to firearms and ammunition; black powder or other low explosive materials; metal pipes, plates, and fragments for use in the construction of an improvised explosive or fragmentation in an improvised explosive; empty wine bottles or similar containers for use in the construction of an improvised explosive; switches, activators, initiators, or fuses used to ignite or initiate an improvised explosive device; records related to the purchase, acquisition, or manufacture of items listed above.

FURTHER AFFIANT SAITH NOT.

Sworn to and subscribed before me this the 11th day of September 2016.

_____
Marnie Musgrave
Special Agent, ATF

_____
Christopher H. Steger
United States Magistrate Judge